UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JUSTIN A. WATSON,                          )
                                           )
      *Plaintiff*,                        )
                                           )
                                           )
v.                                         )           No. 1:16-cv-432-SKL
                                           )
                                           )
COMMISSIONER OF SOCIAL SECURITY,           )
                                           )
      *Defendant*.                       )

## MEMORANDUM AND ORDER

      Plaintiff Justin A. Watson ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g)

seeking judicial review of the final decision of the Commissioner of Social Security

("Commissioner" or "Defendant") denying him disability insurance benefits ("DIB"). Each party

has moved for a judgment [Docs. 15 & 17] with supporting briefs [Docs. 16 & 18]. This matter is

now ripe. For the reasons stated below, (1) Plaintiff's motion for judgment on the pleadings [Doc.

15] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 17] will be

**GRANTED**; and the decision of the Commissioner will be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

      Plaintiff filed his application for DIB on February 25, 2014, alleging disability beginning

October 19, 2012 (Transcript [Doc. 10] ("Tr.") 190).[1]  Plaintiff's claim was denied initially and

upon reconsideration at the agency level.  After a hearing and reviewing new evidence, the ALJ

also found that Plaintiff was not under a disability as defined in the Social Security Act ("SSA")

(Tr. 10-20).  After the Appeals Council denied Plaintiff's request for review making the ALJ's

decision the final decision of the Commissioner, Plaintiff timely filed the instant action.

## II.     FACTUAL BACKGROUND

### A.      Education and Employment Background

Plaintiff was born in 1981 making him a "younger individual" on the alleged onset date

when he was 31 (Tr. 85).  Plaintiff has a high school education, is able to communicate in English,

and has a past relevant work history that includes work as a billing clerk and retail sales clerk (Tr.

18-20, 99).

### B.      Medical Records

The record reflects Plaintiff suffers from, among other things, protracted constipation,

chronic digestive problems, long-term respiratory illness, chronic pain and neuropathy.  While

only select portions of Plaintiff's medical records are specifically mentioned herein, all pertinent

medical information has been considered.

Both before and after the alleged onset date of October 19, 2012, Plaintiff received

treatment at Behavioral Health Associates, where his main treating psychiatrist was Prameet

---

[1] Plaintiff previously filed an application for disability that was denied in a decision dated October 18, 2012 (Tr. 68), the day prior to the current alleged onset date. While the administrative law judge ("ALJ") is bound by the residual functional capacity ("RFC") finding from the prior period unless there is new and material evidence as to those findings, *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), the ALJ in this case determined that new evidence warranted a different RFC determination (Tr. 10). Thus, the relevant period in this case is from October 19, 2012, through the date of the ALJ's decision, November 13, 2015.

Bhushan, M.D., (Tr. 1188-99, 1642-93). On July 11, 2012, Dr. Bhushan completed a medical source statement entitled "Medical Record Summation Inquiry" (Tr. 1764-67). In that statement, Dr. Bhushan concluded Plaintiff's condition was "very reactive to stress" and that he presented "poor" abilities in (defined as "usually precluded" from) social functioning, concentration, persistence, pace and adaptation (Tr. 1764-67). Dr. Bhushan further opined that Plaintiff demonstrated "poor" abilities for following work rules, dealing with the public/supervisors/co-workers, working at a consistent pace for acceptable periods, maintaining attention and understanding, remembering and implementing simple, detailed or complex instructions (Tr. 1765-66).

Outpatient psychotherapy notes from 2014 reflect Plaintiff had diagnoses of bipolar disorder and generalized anxiety disorder, treated with psychotropic medications (Tr. 973-83). Sources treating various physical conditions occasionally commented on Plaintiff's mental health as well. For instance, on March 31, 2014, Plaintiff was seen by a pulmonary doctor who noted that Plaintiff's ADHD and bipolar disorder were "stable on treatment." (Tr. 1728). Plaintiff also received treatment from Tennessee Valley Pain Management and during an examination on June 30, 2014, he reported no depression and was noted to have a normal gait (Tr. 959-60).

On May 21, 2014, a non-examining, state agency psychological consultant, M. Candice Burger, Ph.D., found that Plaintiff had moderate difficulties in concentration, persistence, or pace, and mild limitations in social functioning and activities of daily living (Tr. 93-94).

Plaintiff was referred to Chattanooga Neurology and examined by Matthew Kodsi, M.D., on May 22, 2014, who found Plaintiff's memory was mildly impaired, but his attention and concentration were intact (Tr. 901-05). Dr. Kodsi opined Plaintiff had "mild cognitive

impairment" (Tr. 904), and referred Plaintiff to a consulting neuropsychologist, Robert Catanese, Ph.D. (Tr. 1118).

Concerning physical limitations, Larry McNeil, M.D., concluded Plaintiff could work at the light level on June 25, 2014 (Tr. 95).

A July 31, 2014 examination report signed by Dr. Bhushan notes Plaintiff was oriented and focused with intact memory (Tr. 979-84).

In August-September 2014, the Plaintiff underwent the consultative neuropsychological evaluation with Dr. Catanese (Tr. 1118-22). Dr. Catanese reported a diagnostic impression of dementia, mild to moderate severity, and bipolar disorder, by history (Tr. 1121). He opined that due to a combination of physical, emotional, and cognitive difficulties, Plaintiff would not be able to work an eight-hour workday or 40-hour week (Tr. 1121). More specifically, during testing Plaintiff exhibited moderate impairments in memory and severe impairments in concentration (Tr. 1116). Dr. Catanese concluded these tests results indicated a high-degree of cognitive impairment and inefficiency with observed deficits particularly in short-term memory, visual motor integration skills, higher level functioning skills and certain aspects of language skills (Tr. 1121). Dr. Catanese opined that Plaintiff's cognitive efficiency could improve if his chronic pain and abdominal issues resolved (Tr. 1121).

On September 8, 2014, Brad Williams, M.D., another non-examining, state agency psychological consultant, agreed with the determination that Plaintiff had moderate difficulties in concentration, persistence, or pace, but also found Plaintiff had moderate difficulties in social functioning (Tr. 115-16). Both consultants concluded Plaintiff should have only "casual

encounters" with the public in the workplace and could adapt only to "gradual changes" in the workplace environment (Tr. 93, 113, 115, 120-21).

Assessing physical limitations on September 8, 2014, Reeta Misra, M.D., concluded Plaintiff could perform work at the light exertional level, and that some of his symptoms were contradictory and not supported fully by the medical evidence of record (Tr. 117-19).

At a February 5, 2015 examination with Dr. Bhushan, Plaintiff was evaluated as depressed, but found to have normal thoughts and associations, he had intact memory, he was oriented and able to focus, his judgment was good, and his affect was appropriate (Tr. 1196). Dr. Bhushan again examined Plaintiff on May 7, 2015, and noted that Plaintiff had appropriate affect, good judgment, good insight, and was oriented with focused concentration (Tr. 1649).

Plaintiff was hospitalized between May 30 and June 3, 2015, for bipolar disorder with depression and psychosis (Tr. 1351). Records reflect he was seen in the Emergency room May 29 for suicidal ideation/stating he did not want to live while carrying a pair of scissors (Tr. 1667-68, 1724-25). After medications and therapy, Plaintiff stabilized and, at discharge, he had a brighter mood and affect, had clear thoughts, and denied self-harm ideas (Tr. 1351-52).

On June 8, 2015, Plaintiff was seen by Dr. Bhushan post-hospitalization and Dr. Bhushan noted Plaintiff's mood was "starting to stabilize," and Plaintiff was noted to be euthymic, with appropriate affect, good judgment and insight, and was oriented and focused, with an intact memory (Tr. 1653-55). A July 7, 2015 note from a therapist at Behavioral Health notes Plaintiff stated he was depressed with suicidal ideations, had panic attacks, and "thoughts about 'God taking him now'" (Tr. 1665, 1680).

At his pain management appointment on July 20, 2015, Plaintiff reported improved pain with medications and rest, reported anxiety but no depression, and was observed to have normal gait and normal mood and affect (Tr. 1408-11).

The Mayo Clinic evaluated Plaintiff's chronic pain syndrome and, in a report dated October 19, 2015, noted Plaintiff was in no acute distress but had deconditioning throughout strength testing of the bilateral upper and lower extremities (Tr. 1749). No definitive cause for his pain was diagnosed, but he was reported to have chronic widespread pain and chronic use of opioids for pain (Tr. 1749). A pain rehabilitation program was recommended (Tr. 1749-50).

### C.     Hearing Testimony

At the video hearing, Plaintiff and a vocational expert testified (Tr. 28-58). The Court has carefully reviewed the transcript of the testimony.

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.     Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x

at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

**B.      The ALJ's Findings**

The ALJ found that Plaintiff meets the insured status requirements through March 30, 2017 (Tr. 12). At step one of the sequential process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, October 19, 2012 (Tr. 12). At step two, the ALJ found Plaintiff had the following severe impairments: digestive disorder with recurrent infections, chronic pain syndrome, chronic obstructive pulmonary disease ("COPD"), and

7

neuropathy (Tr. 13). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14-15). The ALJ found Plaintiff had the RFC to perform a reduced range of light work (Tr. 15).[2] At steps four and five, the ALJ found Plaintiff was able to perform his former work as a billing clerk and retail sales clerk and, in the alternative, he could also perform the jobs of mailroom clerk, office helper, or counter clerk, jobs that appeared in significant numbers in the national economy (Tr. 18-20). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the SSA from the alleged onset date through the date of the ALJ's decision (Tr. 20).

## IV. ANALYSIS

Plaintiff argues that the ALJ erred by failing to properly evaluate both (1) the severity of his mental impairments and (2) the medical opinions of record. Defendant counters that substantial evidence supports the ALJ's decision.

### A. Standard of Review

The SSA authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."

---

[2] Specifically, the ALJ found an RFC for "light work as defined in 20 CFR 404.1567(b) where the claimant lifts or carries 20 pounds occasionally and 10 pounds frequently, stands or walks for six of eight hours during the workday, and sits for six of eight hours during the workday. The claimant can have no concentrated exposure to noxious fumes, odors, or respiratory irritants. The claimant must have access to the bathroom three times during the workday at regular intervals, with the opportunity to change protective garments." (Tr. 15).

*Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772

(6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence that was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

B.      **Mental Impairments**

Plaintiff makes a sentence-four argument for reversal or remand. Plaintiff argues the record reflects his history of depression and anxiety and that, given his extensive mental health treatment records, the ALJ failed to give good reasons for affording little weight to the medical opinion of his treating psychiatrist and erred by concluding that his mental impairments were not severe at step two of the evaluation process. Plaintiff also argues the ALJ erred when he failed to include in his RFC any mental impairment limitations, such as concentration limitations, that the non-treating and treating physicians agreed, to some degree, exist.

At step two, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits the claimant's physical or

mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The physical or mental impairment must be established by medical evidence and must last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1508 & 404.1509. A non-severe impairment is "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1 (July 2, 1996). In determining the severity of an impairment at step two, the ALJ must evaluate "evidence about the functionally limiting effects of an individual's impairment(s) . . . in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities." *Id.* at *2.

Step two is described as a "*de minimis* hurdle" to screen out "totally groundless" claims from a medical standpoint, but it is not automatic. *Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). The mere existence of a physical or mental impairment does not, of itself, establish that a claimant is significantly limited from performing basic work activities for a continuous period of time. *Despins v. Comm'r of Sec. Sec.,* 257 F. App'x. 923, 929 (6th Cir. 2007).

"In considering whether a claimant has a severe impairment, an ALJ need not accept unsupported medical opinions or a claimant's subjective complaints." *Younan v. Comm'r of Soc. Sec.,* No. 11-cv-13881, 2012 WL 5439286, at *8 (E.D. Mich. Aug.14, 2012), *adopted by* 2012 WL 5439280 (E.D. Mich. Nov. 7, 2012). The Sixth Circuit has noted "[w]hen doctors' reports contain no information regarding physical limitations or the intensity, frequency and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment." *Despins*, 257 F. App'x. at 930 (citing *Long v. Apfel,* 1 F. App'x. 326,

331 (6th Cir. 2001) (internal quotation marks omitted).

In determining the severity of a mental impairment at steps two and three, an ALJ must follow the regulatory method set forth in 20 C.F.R. § 404.1520a addressing four functional areas.[3] *See* Social Security Rule 96-8p. If the claimant's degree of limitation is none or mild, the ALJ will conclude the impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d); *see also Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007).

After thoroughly reviewing the entire medical record, weighing the medical opinions, and considering Plaintiff's "not entirely credible" subjective claims, the ALJ determined that Plaintiff's medically determinable mental impairments caused "no" or only "mild" limitations in Plaintiff's activities of daily living, in social functioning, and in concentration, persistence, or pace with no episodes of decompensation of an extended duration.[4] If these findings are supported by

---

[3] The regulation has been updated since this case began, and the four functional areas—the "paragraph B" criteria—have changed. *See* 81 Fed. Reg. 66,138-01, 2016 WL 5341732, at *66167 (Sept. 26, 2016). The revisions were not in effect at the time Plaintiff applied for DIB or when the ALJ rendered his decision; the Court will therefore apply the former version of the regulation.

[4] In addressing those four functional areas in this case, the ALJ found:

> The first functional area is activities of daily living. In this area, the claimant has no limitation. The claimant reported that he drives and shops in stores. The claimant testified to working part-time. The claimant is able to pay bills.

> The next functional area is social functioning. In this area, the claimant has mild limitation. In his function report, the claimant reported that he goes to his daughter's school. The claimant has visitors. The claimant testified to a past psychotic episode. In April 2014, the claimant's physician determined that the claimant's bipolar disorder was stable on treatment. In May 2014, the claimant reported a low mood and anxiety. However, the claimant still had a calm mood, normal speech, and was cooperative. In October 2014, the claimant had an overall stable mood. In May 2015, the claimant was hospitalized after a psychotic episode, but stabilized upon discharge.

substantial evidence, then the ALJ properly found that Plaintiff's medically determinable mental impairments were not severe. *See* 20 C.F.R. § 404.1520a(d)(1)[5] ("If we rate the degree of your limitation in the first three functional areas [i.e., activities of daily living; social functioning; and concentration, persistence, or pace] as 'none' or 'mild' and 'none' in the fourth area [i.e., episode of decompensation for required duration], we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521).").

---

The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. The claimant stated he can only pay attention one minute, although this is not supported by the record. The claimant testified to difficulty concentrating and remembering. The claimant's physician determined the claimant is stable. In May 2014, the claimant had intact attention and concentration despite an alleged cognitive impairment. In July 2014, the claimant was oriented times three, with focused attention and concentration, intact memory, and average fund of knowledge. During a September 2014 consultative examination, the claimant scored a full scale I.Q. of 83 when tested, which is in the low average range. In February 2015, the claimant was oriented times three, with focused attention and concentration, intact memory, and an average fund of knowledge. In May 2015, the claimant had a similarly normal mental status examination.

The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration.

Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere.

(Tr. 13-14) (Citations to exhibits and hearing testimony omitted).

[5] An updated version of this regulation became effective March 27, 2017. The Court will apply the version of the regulation that was current at the initiation of this case.

Plaintiff mainly argues that the ALJ merely pointed to a small number of "normal mental status examinations" and an irrelevant IQ score of 83 to determine that there was no severe mental/cognitive impairment. While he disputes the relevance of the IQ score, he does not contend the ALJ misread the record. Instead, Plaintiff argues the ALJ willfully ignored substantial evidence in the record that had been considered by treating, examining and non-examining medical sources, who suggested at least a moderate impairment in concentration, not a mild impairment. Plaintiff also argues that ALJ improperly applied his own medical expertise, therapeutic standards, and clinical diagnosis to explain away certain symptoms. Plaintiff argues these and other errors committed by the ALJ at step two of the sequential evaluation process are not harmless and, instead, constitute reversible error.

As argued by the Commissioner, however, the ALJ properly supported his findings with references to the record, and these references provide substantial evidence to support the ALJ's findings. Plaintiff most strongly disputes the ALJ's finding that he was only "mildly" limited in the area of concentration, persistence, and pace. Yet, Plaintiff unconvincingly claimed he could only pay attention for a minute (Tr. 237), which is a claim totally unsupported by the record. Plaintiff also testified he had difficulty remembering, but in several examinations, he was noted to have intact concentration and attention and was oriented and focused with intact memory (*e.g.*, Tr. 903, 981, 1190, 1196, 1648-49, 1655). The ALJ also considered the opinion of Plaintiff's treating psychiatrist who opined in July 2012 that Plaintiff had various poor and marked limitations.[6] However, the ALJ properly found that this opinion was contradicted by Plaintiff's stability with treatment (*e.g.*, Tr. 1728) and the doctor's own treatment records showing several normal mental

---

[6] This same opinion evidence was also considered in the 2012 unfavorable decision (Tr. 71-80).

status examinations (Tr. 14). As a result, substantial evidence supports the ALJ's decision to give little weight to Dr. Bhushan's July 2012 opinion that Plaintiff had poor or marked limitations in all categories of mental functioning.

In formulating a decision, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). A medical opinion from a treating source must be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citation omitted). While treating physicians' opinions are often afforded greater weight than those of examining physicians, "a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (citing *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993)).

When an ALJ "give[s] a treating source's opinion less than controlling weight, []he must give 'good reasons' for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." *Id.* The stated reasons must be supported by the evidence in the record. *Gayheart*, 710 F.3d at 376. If a treating-source opinion is not given controlling weight, the ALJ must weigh the opinion based on all relevant factors, including the nature of the treatment relationship, the specialization of the medical source, and the consistency and supportability of the opinion. *Id.*

Concerning the other consulting and non-examining doctors, the ALJ also gave them little

weight because their opinions were contradicted by Dr. Bhushan's relatively normal treatment records. Specifically, the ALJ accorded "little weight" to Dr. Catanese's opinion that Plaintiff had a severe concentration impairment, could not maintain ordinary work routine, could not maintain activities of daily living, and could not maintain a work schedule finding that opinion was contradicted by stability with treatment and normal mental status examinations in the record. The ALJ also gave "little weight" to the opinions of the state non-examining psychological consultants who found "moderate" concentration limitations finding that their opinions were unclear because they are "not completely consistent with the PRT findings" and contradicted by the normal mental status examinations in the record. The opinions of these consulting and non-examining doctors need not be evaluated in accordance with the treating physician rules, *see Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013), but the ALJ explained his consideration of their records.

Significantly, Plaintiff has not contended that substantial evidence fails to support the ALJ's credibility determination. In determining credibility, the ALJ considers, among other things, whether there are any inconsistencies between the claimant's statements and the rest of the evidence. 20 C.F.R. § 404.1529(c)(4). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ in this case properly evaluated Plaintiff's credibility pursuant to the SSA's regulations and policies. *See*

20 C.F.R. § 404.1529; *see also* SSR 96-7p, 1996 WL 374186 (July 2, 1996).[7]  The ALJ articulated the reasons for discrediting Plaintiff's subjective allegations, which included inconsistency with the objective medical evidence, Plaintiff's daily activities, and Plaintiff's reported improvements with treatment.

The evidence that the ALJ relied on in discounting Bhushan's opinion also constitutes substantial evidence to support both the ALJ's decision to discount the credibility of Plaintiff and the ALJ's determination that Plaintiff's impairments were not severe.  *See Mueller v. Comm'r of Soc. Sec.*, 683 F. App'x 365, 366-67 (6th Cir. 2017).  While the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms, Plaintiff's subjective statements about the intensity, persistence, and limiting effects of his alleged symptoms were not entirely credible (Tr. 17-18).  Because the ALJ is charged with the responsibility of observing the demeanor and credibility of the witness, his conclusions should be highly regarded.  *Walters*, 127 F.3d at 531; *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

Turning to Plaintiff's RFC complaints, a claimant's RFC is the most that claimant can do despite his or her impairments.  20 C.F.R. § 404.1545(a)(1).  In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers

---

[7] The agency published SSR 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims*, effective March 16, 2016, which supersedes SSR 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.  SSR 16-3p eliminates use of the term "credibility" from SSA policy, as the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character.  *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).

from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). An ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence of record. *Rudd*, 531 F. App'x at 727-28. Both medical and non-medical evidence may properly be considered in reaching an RFC determination. *Id.* Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. Feb. 09, 2007) (quoting *Yang v. Comm'r of Soc. Sec.*, No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004)) (internal quotation marks omitted). A court will not disturb an ALJ's RFC determination so long as the finding is supported by substantial evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

The ALJ must consider *all* of a claimant's medically determinable impairments in the context of determining that claimant's RFC, not just the impairments that are considered severe. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (citations omitted). The ALJ acknowledged his responsibility to consider all of Plaintiff's impairments, including impairments that are not severe when determining Plaintiff's RFC, recognizing his responsibility to consider non-severe impairments. *See Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 842 (6th Cir. 2005). In doing so, the ALJ determined there were no functional limitations necessary in Plaintiff's RFC to account for his non-severe mental impairments.

Thus, the ALJ's failure to find Plaintiff's mental impairments severe at step two is legally irrelevant where, here, the ALJ found other impairments severe, continued the disability determination, and considered non-severe impairments at subsequent steps of the disability

determination. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

Plaintiff also argues the ALJ's comments[8] during the hearing indicate he was substituting his own medical expertise and disregarding the medical record evidence. However, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "The Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined RFC based on objective medical evidence and non-medical evidence." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08 CV 2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (rejecting the argument that an ALJ's RFC determination must be based on a medical advisor's assessment). "Although the RFC must be supported by evidence of record, it need not correspond to, or even be based on any specific medical opinion." *Simon v. Comm'r of Soc. Sec.*, No. 2:16-CV-259, 2017 WL 1017733, at *6 (S.D. Ohio Mar. 16, 2017); *see Thomas v. Comm'r of Soc. Sec.*, No. 11-15450, 2013 WL 1250721, at *4 (E.D. Mich. Feb. 25, 2013) ("The

---

[8] During the hearing, the ALJ stated, "You've done . . . neuropathic or cognitive behavioral therapy, so you understand that . . . you might not necessarily have control over what the thoughts are that go through your mind at any particular time, but we focus on particular thoughts . . . And that's what cognitive behavioral therapy is all about and the concept behind it is trying to focus on positive things rather than negative things. And when you try to do that and they've got suggestions and stuff like that and you['ve] probably been through all of that stuff, you end up focusing a little more on the positive incrementally, okay, over time . . . It's just you['ve] got to deal with them anyway . . . This is the hand you've been dealt with . . . It's our decision as to how we're going to play those cards that we're dealt with and so the decision as to how to react, you have control over them." (Tr. 47-48).

determination of an individual's RFC need not be based on a medical opinion because it is a determination reserved to the ALJ as fact-finder for the Commissioner."), *adopted by*, No. 11-CV-15450, 2013 WL 1250649 (E.D. Mich. Mar. 26, 2013), *aff'd*, 550 F. App'x 289 (6th Cir. 2014).

In addressing the ALJ's comments, Plaintiff does not directly claim bias. To the extent his argument suggests alleged bias, however, the Court must start with the presumption that "policymakers with decisionmaking power exercise their power with honesty and integrity" and "any claim of bias must be supported by a '*strong showing*' of bad faith." *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 436-37 (6th Cir. 2010) (citations and internal quotation marks omitted); *accord Karnofel v.Comm'r of Soc. Sec.*, 518 F. App'x 455, 455-56 (6th Cir. 2013); *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 363-64, (6th Cir. 2004). The ALJ's comments were not offered as part of the decision rationale and there is no indication that any prejudicial bias occurred as a result of the comments.

Finally, as addressed in more detail below, the argument that the opinions from Dr. Bhushan and others support disability when included as limitations by the VE is not pertinent because the ALJ is not required to rely on a VE's response that includes limitations the ALJ has properly rejected.

### D. Physical Impairments

Plaintiff also alleges error with respect to the ALJ's consideration of the opinions of several treating sources addressing his physical impairments.

Treating pulmonologist, Naseer Humayun, M.D., noted Plaintiff could not walk more than 200 feet before having to stop and rest in connection with an application for a license plate or placard for disabled person's parking (Tr. 859). In a Pulmonary Questionnaire completed in July

2014, Dr. Humayun also opined that Plaintiff's longstanding problems with stamina and endurance, as they relate to asthma, respiratory failure and sleep apnea, would interfere with the Plaintiff's capacity to perform daily activity in a work environment (Tr. 970). Dr. Humayun opined Plaintiff could not attend/maintain a normal eight-hour workday/40-hour workweek with any reliability, secondary to his respiratory impairments (Tr. 971).

The ALJ assigned "little weight" to both of Dr. Humayun's opinion statements finding that a nerve conduction study had shown only mild peripheral neuropathy in Plaintiff's legs and that a routine examination in October 2015 showed Plaintiff walked with a normal gait (Tr. 17-18). The ALJ also found a recent low risk cardio stress test was contradictory evidence (Tr. 17-18). As argued by the Commissioner, issuance of a disabled person's parking permit alone is not persuasive. *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (holding that a doctor's "ordering of a disability placard adds nothing to a finding of disability here because there is no evidence that the two have substantially similar requirements for finding a person to be disabled"). Regarding Dr. Humayun's July 2014 statement, the ALJ found the pulmonary function tests did not show listing-level functional capacity levels and discounted the opinion because Dr. Humayun failed to complete the entire opinion questionnaire or provide significant support for his opinion (Tr. 17-18).

Plaintiff received treatment from Matthew Bagamery, M.D., a gastroenterologist, for diarrhea, weight loss, pituitary dysfunction, and sleep apnea (*E.g*., Tr. 988, 1200, 1333). On June 13, 2014, Dr. Bagamery opined that Plaintiff would be limited to a restricted range of sedentary work (Tr. 954). Specifically, Dr. Bagamery opined Plaintiff could lift 20 pounds and carry 10 pounds occasionally; could at one time without interruption sit six hours, stand one hour and walk

one hour total in an eight hour workday; was limited to work that involved only occasional pushing, pulling operation of foot controls with the bilateral lower extremities, and occasional reaching, including overhead, with the bilateral upper extremities (Tr. 949-51). Dr. Bagamery further precluded Plaintiff from work that involved more than occasional postural maneuvers but restricted the Plaintiff from work requiring the use of ladders, scaffolds, and crawling (Tr. 952). He also precluded the Plaintiff from all work around unprotected heights, humidity/wetness, pulmonary irritants and extreme cold, with only occasional exposure to moving mechanical parts, vibration and the operation of motor vehicles (Tr. 953-54).

Dr. Bagamery submitted a second opinion statement in February 2015, in which he opined Plaintiff could sit a total of six hours, stand/walk a total of one hour and lift a maximum of five pounds occasionally and limited Plaintiff to work involving no more than occasional fine or gross manipulation with the bilateral hands and precluded him from work requiring bending, pushing or pulling (Tr. 1770-71). Dr. Bagamery opined Plaintiff had a reasonable medical need to lie down one hour during the workday and for unscheduled breaks and that Plaintiff's concentration could be affected due to pain, medication, or other factors up to two hours daily (Tr. 1771).

The ALJ accorded "little weight" to Dr. Bagamery's June 2014 opinion because he did not attach or refer to records to support his opinion and the sedentary findings in the opinion were contraindicated by tests showing Plaintiff walked normally and had full strength (Tr. 18). The ALJ, also accorded "little weight" to Dr. Bagamery's February 2015 opinion finding it merely listed "objective evidence" to support the opinion, but failed to refer to any such objective evidence (Tr. 18).

A July 28, 2014 medical source statement from treating nurse Jodi Melenbacher, NP-C,

opined Plaintiff could stand a maximum of four hours in a normal workday and walk two hours; could lift a maximum of five pounds occasionally; could only occasionally bend, push, or pull; would have a reasonable medical need to lie down 30 minutes during the workday; and would miss more than two days of work per month (Tr. 1768-69). The ALJ gave Ms. Melenbacher's opinion "little weight" because it was unsupported and conclusory (Tr. 18). The ALJ further (correctly) noted Ms. Melenbacher was not an acceptable medical source to offer medical opinions under the regulations applicable at that time (Tr. 18). An ALJ has broad discretion to evaluate the opinion of an "other" source. *See Brown v. Comm'r of Soc. Sec.*, 591 F. App'x 449, 451 (6th Cir. 2015). The ALJ also noted there was contradictory evidence showing the Plaintiff walked normally and had normal motor functioning (Tr. 18).

The standards applicable to considering the opinions of treating physicians and determining an RFC are addressed above. Plaintiff argues that the ALJ erred by not considering the frequency, nature and extent of the treatment relationship with Plaintiff's treating physicians. From the ALJ's opinion, however, it is clear that the ALJ considered the treating relationships with Plaintiff in evaluating the opinions of the treating physicians. While the ALJ did not specifically discuss the length of each source's treating relationship with Plaintiff, it is clear from his opinion that he was aware of the treating relationship and considered it when evaluating their opinions. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider [the length of the treatment relationship and the frequency of examination], they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis."). Accordingly, the Court **FINDS** that the ALJ properly applied the treating physician rule and

explained good reasons for the little weight that he gave to their opinions.

Non-treating physicians' opinions are not subject to controlling weight. Although an ALJ is "not bound by any findings" made by non-treating physicians, the ALJ "must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence[.]" 20 C.F.R. § 404.1527(e)(2)(i).[9] The ALJ must evaluate a consultative physician's opinion using the relevant factors in 20 C.F.R. § 404.1527(c)(2-6), the same factors used to analyze the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(e)(2)(ii); *Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 710 (6th Cir. 2002) ("We believe that the same factors that justify placing greater weight on the opinions of a treating physician are appropriate considerations in determining the weight to be given an examining physician's views."); *Sommer v. Astrue*, No. 3:10-CV-99, 2010 WL 5883653, at *6 (E.D. Tenn. Dec. 17, 2010) (internal citations omitted) ("The Regulations and Rulings require an ALJ, in the absence of a treating source who enjoys controlling weight, to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability and consistency.") (citing 20 C.F.R. § 404.1527(d) & (f)).

The opinion of the nonexamining physical medical consultants supported a light RFC with four hours standing and walking in a typical workday, limited postural activities and avoidance of pulmonary irritants (Tr. 85-96, 117-18). The ALJ gave "some weight" to these opinions finding them to be supported by electromyogram testing that showed mild neuropathy; however, he found the four-hour standing/walking and postural limits not supported because Plaintiff had good

---

[9] An updated version of this regulation became effective March 27, 2017. The Court will apply the version of the regulation that was current at the initiation of this case.

physical functioning when examined (Tr. 17).

The ALJ is "tasked with interpreting medical opinions in light of the totality of the evidence." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014) (citing 20 C.F.R. § 416.927(b)). The ALJ must determine which medical findings and opinions to credit and which to reject. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (In determining a claimant's RFC, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians.") (citation omitted). The ALJ's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983).

The ALJ has provided a reasoned explanation why Plaintiff's RFC is less restrictive than found by every medical source of record. The ALJ is allowed to depart from the medical opinions in assessing Plaintiff's RFC so long as he does not draw conclusions without citing to substantial evidence in support. The Court has an obligation to defer to the agency's decision where it is supported by substantial evidence even if substantial evidence also would support another decision. *See* 42 U.S.C. § 405(g). Because the ALJ reached his decision using correct legal standards and because those findings are supported by substantial evidence in this case, the Court must affirm it, even if reasonable minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result. *See Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite

conclusion." (internal quotation marks omitted)).

As noted above, Plaintiff also complains that his RFC does not include certain limitations opined by the medical sources that are limitations the VE agreed would preclude work if included. While it is true that an ALJ may rely on a VE's response to a hypothetical question only if the question accurately portrays the claimant's impairments, the "ALJ is required to incorporate only those limitations that he or she accepted as credible." *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389-90 (6th Cir. 2015) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *see also Hernandez v. Comm'r of Soc. Sec.*, No. 4:13-cv-67, 2015 WL 1566144, at *8 (E.D. Tenn. Apr. 7, 2015) ("As previously noted, the RFC determination is not a medical assessment but, instead, is an evaluation made by the ALJ, and the RFC finding is based on all evidence in the record, not merely on the medical evidence."); *Woods v. Comm'r of Soc. Sec.*, No. 4:11-cv-28, 2012 WL 3548033, at *8 (E.D. Tenn. Mar. 16, 2012), *report and recommendation adopted sub nom. Woods v. Astrue*, No. 4:11-cv-28, 2012 WL 3548121 (E.D. Tenn. Aug. 15, 2012) ("The ALJ reasonably adopted some or most of Dr. Allison's opinion because it was generally consistent with the record, but did not include this limitation, which was not well-established in the record, in his RFC determination.").

Because the ALJ demonstrated adequate consideration of all of the medical opinion evidence and his RFC findings were in accordance with SSA's regulations and policies and supported by substantial evidence of record, they are affirmed. The question is not whether there is evidence in the record to support a finding of disability or the inclusion of other limitations, but rather whether the decision reached by the ALJ is supported by substantial evidence in the record. *See Smith*, 99 F.3d at 782. The ALJ properly considered the evidence.

Finally, Plaintiff argues the ALJ essentially "cherry picked" the evidence. Plaintiff contends the ALJ improperly relied on one examination contained in one exhibit—the Mayo Clinic findings—to rebut the opinions of multiple treating and examining sources. It is generally recognized that an ALJ "may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Biermaker v. Comm'r of Soc. Sec.*, No. 14-12301, 2016 WL 7985329, at *9 (E.D. Mich. June 13, 2016), *report and recommendation adopted,* No. 14-12301, 2016 WL 5027593 (E.D. Mich. Sept. 20, 2016) (quoting *Smith v. Comm'r of Soc. Sec.*, 2013 WL 943874, at *6 (N.D. Ohio 2013) (citing *Goble v. Astrue*, 385 F. Appx. 588, 593 (7th Cir. 2010) (citation omitted)). This "cherry picking" argument, however, is frequently made but seldom successful because "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (holding "we see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence"); *accord DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry picking" allegations are seldom successful because crediting them would require courts to re-weigh record evidence).

The Sixth Circuit has consistently upheld the discretion vested in ALJs to weigh conflicting record evidence in assessing disability status. *See id.* Here, Plaintiff has not "persuasively shown that the ALJ erred in conducting [the] difficult task" of weighing the record evidence. *White,* 572 F.3d at 284. Contrary to Plaintiff's argument, the ALJ properly considered and discussed the evidence in the record as a whole and discussed both positive and negative findings. The Court finds the ALJ applied the correct legal standards to weigh the opinion evidence consistent with his responsibility to resolve conflicts in the evidence. *See Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th

Cir. 1994). The ALJ explained the basis for his assessed RFC by considering Plaintiff's symptoms and subjective complaints, medical records, medical opinions, daily activities, and other information. The Court finds that the ALJ's decision in this case satisfies agency regulation and is supported by substantial evidence.

**V.     CONCLUSION**

For the foregoing reasons, it is **ORDERED** that:

1)  Plaintiff's motion for judgment on the pleadings [Doc. 15] is **DENIED**;

2)  The Commissioner's motion for summary judgment [Doc. 17] is **GRANTED**; and

3)  The Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*

SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE